# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANWAR HADDAM,
  Plaintiff,

  v.

FEDERAL BUREAU OF
INVESTIGATION,
  Defendant.

Civil Action No. 01-434 (CKK)

## MEMORANDUM OPINION
(September 8, 2004)

Currently pending before the Court are Defendants' Motion for Summary Judgment [35]

and Plaintiff's Cross-Motion in Support of Partial Summary Judgment [42].  After reviewing the

parties' briefs, together with the submitted exhibits and the relevant law, the Court shall grant

Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Partial

Summary Judgment.

## I: BACKGROUND

Plaintiff came to the United States from Algeria in 1992, and since then has been trying to

obtain asylum status in this country.  Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. and in

Supp. of Pl.'s Cross Mot. for Partial Summ. J. ("Pl.'s Opp'n") at 2-3.  He was detained from

December 1996 to December 2000, and thus far has not been granted asylum.[1]  Id. at 3-4.  He

---

[1] On November 30, 2002, the Board of Immigration Appeals issued a decision granting
Plaintiff asylum.  Pl.'s Opp'n Ex. 1 (In re Haddam, Board of Immigration Appeals Op. at 4
(2000)).  The Board overruled a previous decision by an immigration judge that had denied
asylum, specifically rejecting the earlier determination that Plaintiff was "a danger to the security
of the United States" or "a persecutor of others," or that "there are reasonable ground to believe
[he] has been engaged in terrorist activity.  Id. at 43.
    On December 6, 2000, the Immigration and Naturalization Service certified Plaintiff's

initially filed a request with the Federal Bureau of Investigation ("FBI") on June 9, 1997, under

the Freedom of Information Act ("FOIA" ), 5 U.S.C. § 552 (2004), seeking "all documents,

correspondence, reports, memoranda and/or all other related information pertaining to

[Plaintiff]."  Compl. ¶ 11.  On September 17, 1998, Plaintiff sent a second FOIA request to the

FBI seeking any information obtained or prepared by the FBI "or any other organization or

department within the U.S. government" that might be used by the Immigration and

Naturalization Service as evidence against Plaintiff in his pending asylum case.[2]  Id. ¶ 13.  In

November 2000, the FBI responded to Plaintiff, stating that the FBI's decision to withhold the

requested information was correct.  Id. ¶ 20.  Plaintiff subsequently filed the above-captioned

action against the FBI in this Court on February 27, 2001

Defendant filed an answer on April 9, 2001, asserting that the documents to which

Plaintiff seeks access are being properly withheld under FOIA Exemption 7(A), which applies to

records compiled for law enforcement purposes that, if prematurely released, could interfere with

law enforcement proceedings.  Def.'s Answer to Pl.'s Compl. ("Def.'s Ans.") at 1.  Defendant

also stated that the records "likely have information" withheld pursuant to Exemptions 1, 2, 7(C)

and 7(D), "as well as additional applicable exemptions."[3]  Id.  Defendant determined that much

case to the Attorney General, and the Board's decision to grant asylum was stayed indefinitely
subject to the Attorney General's review.  Pl.'s Opp'n at 4.

[2] Plaintiff separately filed a FOIA request with the Immigration and Naturalization
Service, which already has been acted upon by a court in this District.  *Haddam v. INS*, No. 99-
3371 (D.D.C. March 14, 2003).

[3] These FOIA exemptions, at 5 U.S.C. § 552, correspond to: (b)(1) information classified
pursuant to national security; (b)(2) matters related solely to the internal personnel rules and
practices of an agency; (b)(7)(C) law enforcement records that, if disclosed, would constitute an
invasion of personal privacy; (b)(7)(D) law enforcement records that would disclose the identity

of the requested documents already were or would need to be classified, and that even summaries of the documents would need to be submitted to the Court *in camera* and *ex parte*.  Joint Report on Scheduling, January 16, 2002.

On November 20, 2002, Defendant moved for summary judgment, claiming that it was properly withholding all files responsive to Plaintiff's request under FOIA Exemption 7(A), due to the pending investigation of Plaintiff by the FBI, as well as the pending deportation proceedings involving Plaintiff.  Def.'s St. of Material Facts Not in Genuine Dispute ("Def's St. of Material Facts"), [4] ¶ 1.  Defendant states that some information responsive to Plaintiff's request has been classified, and consequently Defendant has applied FOIA Exemption 1.  Def.'s Mem. of P. and A. in Supp. of Def's Mot. for Summ. J. ("Def.'s Mem. for Summ. J.")  at 8.

On December 3, 2003, Plaintiff filed a motion with the Court to compel Defendant to file an adequate statement of material facts not in dispute, pursuant to Local Civil Rule 7.1(h), arguing that the public record version of Defendant's November 20, 2002, statement "barely amounts to one page, making it impossible for Plaintiff to admit, contest, or even address the individual material facts asserted to be undisputed."  Pl.'s Mot. to Compel at 1.  Defendant subsequently filed a supplemental statement of material facts not in genuine dispute on December 17, 2002, which consisted of three pages.  Defendant's statement sets forth material

---

of a confidential source.

[4] At this point in the action, many of Defendant's submissions to the Court required redactions for public record filing.  All citations to Defendant's record in this opinion are to the public record, not to any versions submitted to the Court *in camera*, *ex parte*, unless otherwise noted.

facts, which as outlined in the chronology above are undisputed.[5]  Def.'s Supplemental Statement

of Material Facts Not in Genuine Dispute ("Def.'s Supp. St."); Pl.'s Resp. to Def.'s Statement of

Material Facts Not in Genuine Dispute ("Pl.'s Resp.").  Defendant's supplement also clearly

states for the public record that the requested files are being withheld pursuant to FOIA

Exemptions 7(A) and (b)(1).  Def.'s Supp. St. ¶ 11.

## II: LEGAL STANDARD

Under the summary judgment standard, the moving party bears the "initial responsibility

of informing the district court of the basis for its motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).  In response, the non-moving

party, must "go beyond the pleadings and by [its] own affidavits, or by deposition, answers to

interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal citations omitted).  The Court is to draw all inferences from

the supporting records submitted in favor of the party opposing the summary judgment motion.

*See Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C.. 1996).  However, mere allegations or denials

in the non-moving party's pleadings are insufficient to defeat an otherwise proper motion for

summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986).  Furthermore, the existence of a factual dispute, by itself, is not sufficient to bar summary

---

[5] After Defendant's supplemental filing, Plaintiff provided no further arguments as to why the Court should compel an adequate statement of material facts not in dispute.  Instead, Plaintiff focuses on other alleged deficiencies in Defendant's actions regarding Plaintiff's FOIA request.  Therefore, the Court has interpreted Plaintiff's silence to mean the Defendant's supplemental filing is sufficient, and Plaintiff's motion has been terminated.

judgment, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); rather, the court must

determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law," *id.* at 251.

A trial court reviews an agency's FOIA decision *de novo*.  5 U.S.C. § 552(a)(4)(B);

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  When summary judgment

is requested in a FOIA matter, the agency bears the burden of showing that a FOIA exemption

applies.  5 U.S.C. § 552(a)(4)(B); *Maydak v. United States Dep't of Justice,* 218 F.3d 760, 764

(D.C. Cir. 2000).  Summary judgment may be granted on the basis of information provided in

affidavits or declarations when they describe "the documents and justifications for nondisclosure

with reasonably specific detail, demonstrate that the information withheld logically falls within

the claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  *Military Audit Project*, 656 F.2d at 738.  Courts must "accord

substantial weight" to an agency's affidavit regarding FOIA exemptions.  5 U.S.C. §

552(a)(4)(B).  On the other hand, a court may award summary judgment for a FOIA plaintiff

when the requested material, "even on the agency's version of the facts, falls outside the

proffered exemption."  *Petroleum Inf. Corp. v. United States Dep't of the Interior*, 976 F.2d

1429, 1433 (D.C. Cir. 1992).

### III:  DISCUSSION

The Freedom of Information Act requires federal agencies, in responding to a request for

information, to:  (1) conduct an adequate search for that information through reasonable efforts;

(2) provide the information to the requestor, unless it falls within a FOIA exemption; and (3)

provide to a requestor any information that can reasonably be segregated from the exempt

information.  5 U.S.C. § 552(a)(3); 5 U.S.C. § 552(b).  FOIA provides that federal agencies can

withhold requested records under designated exemptions, two of which are being expressly

claimed by Defendant in this case:

> [M]atters that are [] specifically authorized under criteria established by an Executive
> order to be kept secret in the interest of national defense or foreign policy and are in fact
> properly classified pursuant to such Executive order.  5 U.S.C. § 552(b)(1) ("Exemption
> 1");

> [R]ecords or information compiled for law enforcement purposes, but only to the extent
> that the production of such law enforcement records or information [] could reasonably be
> expected to interfere with enforcement proceedings.  5 U.S.C. § 552(b)(7)(A)
> ("Exemption 7(A)").

In Defendant's three declarations submitted for the public record, totaling 22 pages,

Defendant contends that it has met FOIA's procedural requirements regarding a reasonable

search, applicability of exceptions and an attempt at segregating non-exempt information. With

respect to the adequacy of the search for Plaintiff's requested material, Defendant describes the

FBI systems that contain records and how the records are organized and searched.  Def.'s Resp.

to Pl.'s Mot. to Compel, Attach. 2, Decl. of Christine Kiefer[6] ("Kiefer Dec. 17, 2002, Decl.") ¶¶

15-17.  In withholding the requested material, Defendant contends that all files responsive to

Plaintiff's request are exempt from disclosure under Exemption 7(A), while only part of the files

also would be exempt under Exemption 1.  *Id.* at ¶¶ 18, 28.  Defendant justifies invoking

Exemption 1 by maintaining that the requested materials "contain a significant amount of

classified information," and that classified material can be withheld in its entirety.  *Id.* ¶¶ 28;

---

[6] Declarant is an attorney-advisor for the FBI and at the time of the affidavit was Acting
Chief of the Litigation Unity, Freedom of Information-Privacy Acts Section, Records
Management Division at FBI Headquarters.  Def.'s Notice of Submission of Docs *in camera* and
*ex parte*, Ex. 1, Kiefer Oct. 30, 2002, Decl. ¶ 1.

Kiefer Oct. 30, 2002, Decl. ¶ 9.   Regarding Exemption 7(A), Defendant states that it has a

reasonable belief that the pending law enforcement and deportation proceedings involving

Plaintiff could be disrupted by the disclosure of the requested information, and the only sections

of the files that would not reasonably be expected to interfere with law enforcement proceedings

are those which constitute public source information.[7]  Kiefer Dec. 17, 2002, Decl. ¶¶ 21-28;

Kiefer Oct. 30, 2002, Decl. ¶¶ 4-5.[8]

Defendant argues though that much of the detail behind its rationale for withholding the

requested information is very sensitive information that cannot be shared with Plaintiff or put in

the public record.  Kiefer Oct. 30, 2002, Decl. ¶¶ 5, 12; Kiefer Nov. 21, 2002, Decl. ¶ 5; Kiefer

Dec. 17, 2002, Decl. ¶ 33.  Defendant invokes Exemption 7(A) for all of the information being

withheld, stating that if released it "would jeopardize further investigations and/or prosecutive

efforts."  Kiefer Dec. 17, 2002, Decl. ¶ 23.  In addition, at the request of another government

agency, Defendant is asserting Exemption 1 to withhold some of the requested records, stating

that the classified information in question falls within at least three of the seven categories of

different types of classifiable information: intelligence activities, sources or methods;  foreign

relations or activities (including confidential sources) and foreign government information.

---

[7] Defendant initially construed Plaintiff's request as excluding all public source materials, but Plaintiff disputed that he had ever agreed to that approach.  Pl.'s Response to Def.'s St.'s of Material Facts Not in Genuine Dispute, ¶ 3.  Defendant subsequently produced 19 pages of public source materials on February 7, 2003.  Def's Reply to Pl.'s Opp'n at 6; Pl's Amended Reply in Supp. of his Cross Motion for Partial Summ. J. ("Pl.'s Amended Reply") at 3, n.2.

[8] Defendant's third public declaration by Christine Keifer, submitted November 21, 2002, along with Defendant's Motion for Summary Judgment, documents Defendant's response to an order from this Court that Defendant incorporate Plaintiff's prioritization requests in selecting a sample of documents for use in preparing a *Vaughn* index, but provides no justifications for invoking any FOIA exemptions.

Kiefer Oct. 30, 2002, Decl. ¶ 10 (citing Exec Order No. 12,958 § 1.5).  Defendant also states that

the information was classified as SECRET since it was determined that unauthorized disclosure

could reasonably be expected to cause serious damage to national security by harming foreign

relations, and revealing intelligence activities and/or intelligence sources or methods of the

United States.[9]  *Id.*; Exec. Order No. 12,958 § 1.3, 60 Fed. Reg. 19,825 (April 20, 1995).

   Consequently, Defendant has filed with the Court, on an *in camera*, *ex parte* basis, a

description of the files identified as responsive to Plaintiff's FOIA request and a more detailed

justification for withholding the information as to each exemption asserted.  This submission

includes an unredacted version of the motion for summary judgment supported by four affidavits,

including an unredacted declaration from Christine Kiefer, and a *Vaughn* index using a

categorical approach.  Since Defendant identified approximately 2,500 documents as responsive

to Plaintiff's request in its pleadings filed with the Court *in camera* and *ex parte*, Defendant

analyzed a sample of 327 documents, organized them by the type of exemption, and detailed the

nature of the information determined to be exempt under FOIA or the Privacy Act, as reflected in

the declarations.  Def.'s *in camera* Ex. J (*Vaughn* index).  A Justification Table sets forth a page-

by-page narrative explaining each exemption asserted in the sample pages.  *Id*.  By coding the

sample pages according to the exemption being applied, as described in the declarations, and

providing specific narrative justifications contained in Exhibit J, the FBI's *in camera*, *ex parte*

submission sets forth an in-depth narrative justification for each exemption used to withhold

---

[9]  SECRET is the middle level of the three-tiered system for classifying information, with
CONFIDENTIAL used for information that could cause "damage to national security," and TOP
SECRET used for information that could cause "exceptionally grave damage" to national
security.  Exec. Order No. 12,958 § 1.3, 60 Fed. Reg. 19,825 (April 20, 1995).

information.  Defendant's *in camera* Exhibit J has been reviewed both by the FBI and other

government agencies, and the FBI asserts Exemptions 7(A) and (1), as noted above, plus FOIA

Exemptions 2 and 7(C) and Privacy Act Exemption j(2).[10]  The *in camera* declarations and *in*

*camera Vaughn* index thoroughly set forth the functional categories established by the FBI to

analyze certain types of documents, the types of documents contained in each functional

category, the harm to the Government's case in the pending law enforcement proceeding should

such material be released, and the application and justification for all relevant exemptions.

　　Plaintiff disputes Defendant's conclusion that it has met its burden to "demonstrate that it

performed a proper and legally sufficient identification and retrieval process that was reasonably

calculated to discover documents responsive to Plaintiff's requests."  Pl.'s Opp'n at 1.  Plaintiff

---

[10] Defendant cited FOIA Exemptions 2 and 7(C) and Privacy Act (j)(2) in the November 2000 letter to Plaintiff affirming an earlier decision to withhold information responsive to Plaintiff's FOIA request.  Compl. ¶ 20 and Ex. H (letter from the Office of Information and Privacy of the United States Department of Justice); Def.'s Ans. ¶ 21.  Exemption 2 permits agencies to withhold information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 7(C) permits the withholding of information compiled for law enforcement purposes when it "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Privacy Act allows agencies to exempt certain law enforcement records that identify offenders, alleged offenders, informants and investigators.  5 U.S.C. § 552a(j)(2).  While Defendant's public filings related to the motion for summary judgment specifically assert only Exemptions 7(A) and 1, Defendant also states that "additional exemptions of the FOIA and Privacy Act have been asserted" *in camera, ex parte*.  Kiefer Dec. 17, 2002, Decl. ¶ 28.  The Court sees no reason not to state these additional exemptions, which appear on the public record.  *See also* p. 28 *infra*.

In determining whether to provide a requestor with access to information, an agency may not use the provisions of FOIA to bar access otherwise granted by the Privacy Act, and vice versa.  5 U.S.C. § 552a(t).  Therefore, if Plaintiff could prevail under either FOIA or the Privacy Act, Defendant could not rely on the other law to withhold that same information.  However, Defendant has not explained on the public record how the Privacy Act is involved in Plaintiff's FOIA request, and Plaintiff did not address the potential applicability of the Privacy Act for withholding information in his opposition or cross-motion for summary judgment.  Accordingly, this Court declines to rule on the Act's relevance here.

also argues that Defendant has not met its obligation to adequately substantiate its Exemption 1

claim on the public record. *Id.* Plaintiff moves for partial summary judgment on three issues.

First, Plaintiff contends that Defendant has made only "vague, generic and conclusory statements

of justification" for its decision to file a *Vaughn* index and other required submissions almost

exclusively *in camera*, *ex parte*. Second, Plaintiff argues that Defendant did not follow the

correct procedure for invoking Exemption 7(A). Finally, Plaintiff contends that Defendant's

attempt to rely on "unnamed exemptions" is improper.[11] *Id.* at 2.

_____The Court takes each argument in turn, and finds that Defendant is justified in relying on

Exemption 7(A) and Exemption 1 to withhold information, as well as other exemptions, and is

justified in using *in camera*, *ex parte* affidavits and other submissions to move for summary

judgment.

> ### A.      *Reliance on* **In Camera, Ex Parte** *Affidavits*

Central to all of Plaintiff's arguments is the question of whether Defendant can prove its

case on an *in camera*, *ex parte* basis, and to what extent must Defendant provide evidence in the

public record that it has complied with the requirements of FOIA. Accordingly, the Court

analyzes this threshold question first, and finds that in these circumstances, it is appropriate for

the Court to sacrifice some of the benefits of the open adversarial process and instead review

Defendant's arguments *in camera*, *ex parte*.

Defendant publicly describes the approach being used to ensure that the Court can review

Defendant's response to Plaintiff's FOIA request without compromising national security or

---

[11] The Court notes that Defendant also refers to "additional exemptions" of the Privacy Act.  Kiefer Dec. 17, 2002, Decl. ¶ 28.

pending law enforcement proceedings.  Def.'s Mem. at 4-7.  Defendant provides few details on the public record as to exactly how it is justifying its decision to withhold all documents that were identified as responsive to Plaintiff's request, and instead, provides a more thorough rationale in its *in camera, ex parte* affidavits.

Plaintiff argues that this Court should not grant summary judgment to Defendant because Defendant is impermissibly using *in camera, ex parte* review to meet its legal obligation to create an adequate public record for the FOIA case.  "[S]ince the very nature of summary judgment determinations depends on the presence or absence of factual disputes, to the greatest extent possible all such alleged facts should be part of the public record in order to provide Plaintiff with an adequate opportunity to concede or dispute them."  Pl.'s Opp'n at 10 (citing Fed. R. Civ. P. 56(c)).  Plaintiff further argues that Defendant fails to justify non-disclosure with sufficient specificity in its public record, exploiting "the inherent disadvantage" to Plaintiff that is present when a court uses *in camera* review.  *Id*. at 10-11.   As an example of Defendant's alleged excessive secrecy, Plaintiff alleges that Defendant refuses to account for the number of pages subject to Plaintiff's FOIA request.[12]  Pl.'s Opp'n at 10-12.  Plaintiff states that Defendant's failure to provide this estimate "cannot be justified by any reasonable expectation of damage."  Pl.'s Opp'n at 12.

This Circuit requires the district court to "attempt to create as complete a public record as possible" before electing to examine affidavits *in camera* and without "the benefit of criticism

---

[12] FOIA requires that "an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by [a FOIA] exemption . . .  pursuant to which the denial is made." 5 U.S.C. § 552(a)(6)(F).

and illumination" that is gained through participation by the opposing party's counsel.  *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (citations omitted).[13]  "The legitimacy of accepting in camera affidavits . . . has troubled this [Circuit] court in the past.  Although in camera review of withheld documents is permissible (and even encouraged), we have held that a trial court should not use in camera affidavits unless necessary . . . ."  *Lykins v. United States Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984).  This necessity exists when "(1) the validity of the government's assertion of exemption cannot be evaluated without information beyond that contained in the public affidavits and in the records themselves, and (2) public disclosure of that information would compromise the secrecy asserted."  *Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983).

Frequently the issue of *in camera, ex parte* affidavits arises in FOIA cases involving Exemption 1, where the underlying information requested by Plaintiff is classified for national security reasons, and some of the descriptions about that information may be classified.  While "the [C]ourt is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure,"  *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), the Court need not require any public filing that would "violate Exemption 1, for its basic purpose is to ensure that the FOIA will not require disclosure of any such sensitive material unless judicial scrutiny finds it warranted."  *Id.* at 1385.  "The

---

[13] This Circuit also has held that a trial judge's decision to grant summary judgment to a federal agency in a FOIA action may be reversed if, on appeal, it is found that a plaintiff "was deprived of the opportunity to effectively present its case to the court because of the agency's inadequate description of the information withheld and exemptions claimed."  *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *see also King v. United States Dep't of Justice*, 830 F.2d 210, 217-18 (D.C. Cir. 1987).

proper procedure for a district court, then, is to accept sensitive affidavits in camera." *Id.*

 This Circuit has held, however, that the defendant agency still owes some sort of public response to the plaintiff in such a situation. "Case law in this Circuit is clear that when a district court uses an in camera affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party." *Armstrong v. Executive Office of the President*, 97 F.3d 575, 580-81 (D.C. Cir. 1996) (citing *Lykins,* 725 F.2d at 1465). "These procedures ensure that the use of such affidavits has the smallest possible negative impact on the effective functioning of the adversarial system." *Id.* (finding that the district court judge erred in failing to explain why the use of an *in camera* affidavit was appropriate and why, even in a national security case*,* none of that affidavit could be shared with appellant). This Circuit has been more likely to accept and rely on *in camera, ex parte* affidavits from the government when the government agency also submits one or more public affidavits to support the withholding of material. *Hayden*, 608 F.2d at 1387-88. However, if the public declaration merely contains conclusory statements alleging that the *in camera* submission is "sensitive," this Circuit has been more skeptical of the need to base a ruling on information to which Plaintiff has had no access. *Yeager v. Drug Enforcement Agency*, 678 F.2d 315, 325 (D.C. Cir. 1982) (deciding a district court erred in using *in camera* exhibits, as the Court could not "discern from the record any reason that the DEA should have been excused from filing a public *Vaughn* index, other than the fact that the Agency simply did not want to reveal the nature of the information contained in the [] records.").

 Plaintiff contends that a more thorough public record is required in this case, citing *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 31 (D.C. Cir. 1998). Pl.'s Opp'n at 15.

13

However, *Campbell* merely holds that an agency's affidavits must provide adequate justification for invoking Exemption 1, not that those affidavits must necessarily be in the public record. *Campbell*, 164 F.3d at 31 (rejecting an agency's affidavits, which were on the public record, as "conclusory").[14]  Moreover, this Circuit has acknowledged that

> [i]n a limited range of security cases, it is simply not possible to provide for orderly and responsible decisionmaking about what is to be disclosed, without some sacrifice to the pure adversary process. By providing for In camera review, Congress has acknowledged that judges must sometimes make these decisions without full benefit of adversary comment on a complete public record.

*Hayden*, 608 F.2d at 1385.

This is not a case where Defendant has neglected to provide any public record. Defendant has provided 22 pages of public declarations, four pages of statements of facts, plus 18 pages of briefing.[15]  In addition, Defendant has stated in the public record its justification for using *in camera* affidavits.  Kiefer Oct. 30, 2002, Decl. ¶¶ 5, 12; Kiefer Dec. 17, 2002, Decl. ¶¶ 5, 33, 34; Def.'s Reply at 5-8.  In assessing the validity of Defendant's concern about the risk of disclosing sensitive information, this Court defers to the expertise of Defendant and other federal agencies charged with responsibility for national security and law enforcement matters.  *Ctr. for*

---

[14] In fact, *Campbell* notes in dicta that in "special circumstances" in which "even minimal detail" constitutes sensitive information, "the solution is for the court to review the document *in camera* rather than passively accept an agency's unsubstantiated Exemption 1 defense." *Campbell,* 164 F.3d at 31 n.9.

[15] Regarding Plaintiff's suggestion that Defendant is refusing to publicly disclose the number of pages responsive to Plaintiff's request, the Court observes that during earlier negotiations, Defendant informed Plaintiff that the requested records totaled more than 5,000 pages, and this large volume was the subject of much discussion between the parties for several months in 2001.  Joint Rpt. on Scheduling, January 16, 2002, at 6.  Defendant's more recent estimate of the number of responsive pages is approximately 2,500.  (Def.'s *in camera* submission.)

*Nat'l Sec. Studies v. United States Dep't of Justice*, 331 F.3d 918, 927-28 (D.C. Cir. 2003).

The Court is mindful of the inherent litigation difficulties created when a plaintiff cannot access the full record.  However, the Court has reviewed the full record *in camera* and believes that it involves a set of circumstances necessitating the use of *in camera, ex parte* submission of affidavits, *Vaughn* indices and other material normally provided in the public record. Accordingly, Defendant's reliance on these submissions to justify invoking Exemptions 1 and 7(A) of FOIA is permissible.

### B.     Demonstrating the Adequacy of the Search

Plaintiff argues that Defendant should be denied summary judgment because it has not met its burden to perform an adequate search for the requested materials.  Pl.'s Opp'n at 11. Plaintiff contends that Defendant's public record does not set forth, in detail, "the terms and type of search performed," *see Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990)), "what records were searched, by whom, and through what processes," *Steinberg* v. *United States Dep't of Justice,* 23 F.3d 548, 552 (D.C. Cir. 1994), or "which key words were used to search for responsive documents," *Judicial Watch, Inc. v. United States Dep't of Justice*, 185 F. Supp. 2d 54, 64 (D.C. Cir. 2002).  Pl.'s Opp'n at 12-13.  Plaintiff alleges that at one point Defendant had indicated the existence of a "second Headquarters main file" involving Plaintiff but never demonstrated that this file was searched or that the scope of the search was expanded to include possible additional files.  *Id.* at 13-14.  Plaintiff notes that Defendant later stated that, after further investigation, it had determined that this second file did not exist, "creat[ing] additional skepticism regarding the adequacy of Defendant's process while leaving Plaintiff powerless to challenge this determination."  Pl.'s Am. Reply at 4.

15

Defendant counters that it did conduct a proper search for records responsive to Plaintiff's request.  Defendant describes its record and retrieval systems in detail.  Kiefer Dec. 17, 2002, Decl. ¶¶ 15-17; Def's Reply at 3-5.  The record publicly explains the way data is organized and searched in the FBI's Central Records System, Automated Case Support system, Investigative Case Management system, Electronic Case File repository and Universal Index.  Kiefer Dec. 17, 2002, Decl. ¶¶ 15-17.  Defendant states that this declaration, in addition to its *in camera, ex parte* submissions, "clearly reflect[] that defendant conducted an adequate search."  Def's Reply at 5.

To prevail on a motion for summary judgment, an agency "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *The Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citations omitted).  "The issue is not whether any further documents might conceivably exist, but rather whether the government's search for responsive documents was adequate." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (quotations omitted).  "[T]he proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record." *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  "[T]he agency must show that it has made a good faith effort" to search for the requested record, *Oglesby,* 920 F.2d at 68, but if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper," *Truitt*, 897 F.2d at 542.  "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

If a plaintiff can point to specific existing files or record systems that are unaccounted for in a defendant's search, a court may require the defendant agency to investigate the plaintiff's claim or provide further evidence of a proper search. *See, e.g.*, *Campbell*, 164 F.3d at 28-29 (finding that the FBI had not demonstrated an adequate search, because it failed to search its electronic surveillance index and "tickler" files that could contain relevant documents); *Nation Magazine,* 71 F.3d at 891 (finding that the Customs Service had not demonstrated it had adequately searched "subject matter files"); *Scott*, 916 F. Supp. at 49-50 (requiring the CIA to explain whether the files were in the CIA's possession, whether they had been searched, and if not, why not).

However, in this case, Defendant responded to Plaintiff's concern about additional, previously unsearched files at Headquarters.  Pl.'s Am. Reply, Ex. 1 (Feb. 13, 2003, letter to Plaintiff's counsel responding to the inquiry of a "second Headquarters main file").  Defendant stated that it had "review[ed] the matter" and "believes that there is no 'missing' file, but rather believes that it has conducted a thorough search and has identified all files responsive to [Plaintiff's] request." *Id.*  While Plaintiff expresses skepticism, he has not alleged nor produced evidence of bad faith on the part of Defendant.  Plaintiff points to no known records or record systems that have been ignored by Defendant in its search.

The Court is satisfied that Defendant's public declarations and *in camera, ex parte* submissions were made in good faith and satisfy FOIA's requirements to demonstrate an adequate search.  Plaintiff argues that Defendant should fulfill these requirements on the public record, but as noted *supra,* Defendant is entitled to make *in camera, ex parte* submissions in sensitive circumstances such as the case at bar.

### C.      Justifying the Applicability of Exemption 1

Defendant applies Exemption 1 to "a significant amount" of the total requested documents, so the questions for the Court are whether the information subject to this Exemption meet the criteria for being kept secret in the interest of national defense or foreign policy, and whether the information was properly classified as such.  Kiefer Oct. 30, 2002, Decl. ¶¶ 9-11; Kiefer Dec. 17, 2002, Decl. ¶28; 5 U.S.C. § 552(b)(1).  Section 552(b)(1) of FOIA requires that federal agencies follow the current Executive Order for classifying information.

Defendant states that it ensured Executive Order 12,958 was followed in classifying the information in question, and that the FBI adhered to the proper internal procedures in reviewing the classification decisions.  Kiefer Dec. 17, 2002, Decl. ¶32; Def.'s Reply at 7.  As discussed *supra*, Defendant states that the classified information in question falls within at least three of the seven categories of different types of classifiable information: intelligence activities, sources or methods, foreign relations or activities (including confidential sources), and foreign government information.  Kiefer Oct. 30, 2002, Decl. ¶ 10 (citing Exec Order No. 12,958 § 1.5).  Defendant also states that the Executive Order was followed in classifying the information as SECRET since it was determined that unauthorized disclosure could reasonably be expected to cause serious damage to national security by harming foreign relations, and revealing intelligence activities and/or intelligence sources or methods of the United States.  *Id.*; Exec. Order No. 12,958 § 1.3.

Defendant argues that it can provide no further information on the public record as to why some of the information requested by Plaintiff is classified, because doing so "would identify the very material sought to be protected."  Kiefer Oct. 30, 2002, Decl. ¶ 12; Kiefer Dec. 17, 2002,

Decl. ¶ 33.  Instead, Defendant submitted to the Court a separate *in camera, ex parte*,

justification for classifying both the underlying information and summaries of that information.

Def.'s Mem. at 4-7.  Another government agency, which requested the secret classification, also

has submitted an *in camera, ex parte* classified declaration to the Court providing more details

about the information in question and the basis for withholding the information under FOIA

Exemption 1.  Kiefer Oct. 30, 2002, Decl. ¶ 12.

In opposing a grant of summary judgment for Defendant, Plaintiff cites Defendant's

reliance on *in camera, ex parte* review and argues that such reliance is disproportionate and

prevents Plaintiff from being able to even contest Defendant's decision to apply Exemption 1.

Pl.'s Opp'n at 10.

This Circuit has outlined the proper procedure for District Courts to review Exemption 1

cases:

> (1) The trial court must make a *De novo* review of the agency's classification decision,
> with the burden on the agency to justify non-disclosure.
> (2) In conducting this review, the court is to give "substantial weight" to affidavits from
> the agency.
> (3) The court is to require the agency to create as full a public record as possible,
> concerning the nature of the documents and  the justification for nondisclosure.
> (4) If step (3) does not create a sufficient basis for making a decision, the court may
> accept classified affidavits In camera, or it may inspect the documents In camera.. . .
> (5) The court should require release of reasonably segregable parts of documents that do
> not fall within FOIA exemptions.

*Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1384 (D.C. Cir. 1979).  "[A]ny affidavit or other

agency statement of threatened harm to national security will always be speculative to some

extent . . . a court, lacking expertise in the substantive matters at hand, must give substantial

weight to agency statements, so long as they are plausible and not called into question by

contrary evidence or evidence of agency bad faith." *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980).

Courts in this Circuit defer to agency declarations that meet those criteria and "describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *King*, 830 F.2d at 217. Moreover, as noted above, Defendant need not expose highly sensitive information in a public record to demonstrate compliance with the requirements of FOIA to invoke Exemption 1. The test is whether "the agency's explanation was full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *King,* at 218, *see also Voinche v. FBI*, 46 F. Supp. 2d 26, 29 (D.D.C. 1999) (upholding the use of Exemption 1 based on an agency's declaration that disclosure of the information would "identify not only the specific intelligence gathering activity or method, but the specific target of the activity or method as well."); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 47 (D.D.C. 2003) ("confirm[ing] that disclosure of the classified information withheld 'reasonably could be expected to cause serious damage to the national security'").

This Court has reviewed Defendant's classification decisions in light of Executive Order 12,958 and finds no evidence that the classification decisions were incorrect. The Court "is not in a position to second-guess" the FBI's conclusion that disclosure of the requested information could threaten national security. *Branch v. FBI*, 700 F. Supp. 47, 48 (D.D.C. 1988). The Court finds no indication of bad faith or contrary evidence that disclosure of this information might not

damage national security.[16]  While Plaintiff understandably would like to review the FBI's

decisions for classifying the material, nothing in FOIA entitles Plaintiff to do so.  Moreover, the

Court has examined *in camera, ex parte* Defendant's *Vaughn* index and affidavits, and concludes

that Defendant has met the other requirements for invoking Exemption 1 in that Defendant has

provided: a satisfactory explanation of why the material is classified, evidence that it has

provided as full a public record as possible, and a demonstration that no information from the

classified materials can be segregated and provided to Plaintiff.

> **D.**     **Rationale for Invoking FOIA Exemption 7(A)**

Defendant asserts Exemption 7(A) "for withholding in its entirety all material responsive

to [P]laintiff's request."  Kiefer Dec. 17, 2002, Decl. ¶¶ 18, 23.  This FOIA exemption, which

permits an agency to withhold information compiled for law enforcement purposes, applies only

if disclosure of the information could reasonably be expected to interfere with pending or

prospective enforcement proceedings.  5 U.S.C. § 552(b)(7)(A); Kiefer Dec. 17, 2002, Decl. ¶

20.  Defendant argues that all of the information requested by Plaintiff meets those criteria,

because of "(a) the pending status of the underlying investigation of [P]laintiff and (b) the

pending deportation proceedings involving Plaintiff."  Kiefer Oct. 30, 2002, Decl. ¶ 4.

Defendant does not elaborate on the "underlying investigation" on the public record.  With

regard to the latter, Defendant points to the fact that Plaintiff is still involved in administrative

---

[16] Plaintiff alludes to the Board of Immigration Appeals' now-stayed decision to grant Plaintiff asylum, in that the Board reviewed some of the documentation in question and "found that it failed to show Plaintiff was involved in terrorism or constituted a threat to national security."  Pl.'s Opp'n at 16.  However, that court's conclusion regarding whether Plaintiff posed a threat to national security based in part on the documentation does not mean that the information in the documentation, if released, could not pose a threat to national security.

proceedings since the Attorney General has not yet issued a decision on whether he will uphold the Board of Immigration Appeals's decision to grant Plaintiff asylum.  Kiefer Dec. 17, 2002, Decl. ¶ 21; Pl.'s Opp'n at 4.  "At least until th[is proceeding] and all law enforcement investigations concerning the plaintiff and his activities are completed, the FBI will consider the documents responsive to plaintiff's request to be in an open and pending status."  Kiefer Dec. 17, 2002, Decl. ¶ 22.

In the public record, Defendant addresses the "interference" requirement of Exemption 7(A) by stating that the release of any portion of the information requested, "or even the release of a more in-depth description of those investigative files" would be "premature."  Kiefer Oct. 30, 2002, Decl. ¶ 5.  Such disclosure could jeopardize ongoing and future FBI investigations "by alerting individuals or organizations of the FBI's interest in their current activities," which could cause those parties to elude detection, alter evidence and otherwise disrupt the investigations.  *Id.* Defendant states that it is "unable to describe in more detail on the public record" why it is invoking Exemption 7(A) "without raising significant risks to the investigation."  *Id.* ¶ 4. However, Defendant has provided a more detailed rationale in its *in camera, ex parte* declaration submitted to the Court.  *Id.*

Plaintiff claims that he is entitled to partial summary judgment because Defendant has not established that disclosure of the records would interfere with any law enforcement proceeding as required by FOIA Exemption 7(A).  Pl.'s Opp'n at 17-23.  Plaintiff does not dispute that an actual or potential law enforcement proceeding exists as the basis of Defendant claiming this exemption.  However, Plaintiff argues that Defendant has not met the requirement to categorize the documents by function and then describe how the material in each category would interfere

with enforcement proceedings.  Pl.'s Opp'n at 19-21 (citing *Bevis v. United States Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)).  Plaintiff asserts that Defendant's public record fails to follow the requirements of *Bevis* and is instead using an impermissible "blanket approach" to declare that all of the requested documents relate to an ongoing or pending investigation, without explaining how their disclosure would harm any investigation.  *Id.* at 21.

As with national security matters, this Court generally does not question the FBI's expert assessment that disclosure of the requested information could interfere with pending or prospective law enforcement proceedings.  *See Center for Nat'l Sec. Studies*, 331 F.3d at 927-28 ("Just as we have deferred to the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under Exemption 7(A) in appropriate cases").  "Because the FBI specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference."  *Campbell v. Dep't of Justice*, 164 F.3d at 32.  However, a court's "deferential" standard of review is not "vacuous."  *Id.*

A government agency may establish the potential for interference by showing that "release of the records would reveal the scope, direction and nature of the its investigation" or that "release of the records may give the requester earlier and greater access than otherwise possible" as an impermissible tool for discovery in a law enforcement proceeding.  *Kay v. FCC,* 976 F. Supp. 23, 38 (D.D.C. 1997) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241 (1978), and *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989)).  In addition, an agency can "demonstrate that premature release of the records could give a litigant the ability to construct defenses to avoid the charges entirely."  *Kay*, 976 F. Supp. at 39.  Witness intimidation is another possibility when certain information is released to a plaintiff when law enforcement

proceedings are pending.  *Id.*

Federal agencies have two main options for demonstrating that Exemption 7(A) is appropriate.  They can either show the potential for interference with a law enforcement proceeding by justifying the Exemption 7(A) applicability to each document in question (a traditional *Vaughn* index), or they can show such potential interference more generically with respect to groups of documents in the requested set of information.  *See, e.g.*, *Robbins Tire & Rubber Co.*, 437 U.S. at 223-24; *Crooker v. Bureau of Alcohol, Tobacco and Firearms,* 789 F.2d 64, 67 (D.C. Cir. 1986); *Bevis*, 801 F.2d at 1389.  An agency taking the latter approach should group documents into relevant categories that are "sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation.'" *Crooker*, 789 F.2d at 67, quoting *Campbell v. Dep't of Health & Human Srvcs*, 682 F.2d 256, 265 (D.C. Cir. 1982).  Any agency using this generic, categorical approach must meet three requirements. "First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1389-90.

Defendant acknowledges that *Bevis* governs its approach for justifying the withholding of the requested documents under Exemption 7(A), and Defendant states that it can provide a detailed rationale only on an *in camera, ex parte* basis.  Kiefer Dec. 17, 2002, Decl. ¶ 20.  As explained *supra*, Defendant submitted a detailed index *in camera, ex parte*, to allow the Court to review the sampling of documents, the categorical decisions of Defendant to exempt all of the requested documents under Exemption 7(A), and Defendant's segregability analysis.  Def.'s

Mem. at 4-7.

Plaintiff does not contest Defendant's use of sampling, based on prioritizations provided by Plaintiff, to satisfy its *Vaughn* index responsibilities.  Instead, Plaintiff's principal argument against Exemption 7(A) applicability is that Defendant has not done that analysis on the public record, leaving Plaintiff with no way to verify whether Defendant has properly analyzed the documents.  Pl.'s Opp'n at 7.   However, as discussed *supra,* in this situation Defendant may provide these Exemption 7(A) justification details *in camera, ex parte* instead.

The Court has reviewed Defendant's submission and is satisfied that Defendant incorporated the priorities provided by Plaintiff in constructing a sample of documents for analysis, reviewed each document to see whether it met the criteria as outlined *supra* for being covered by the 7(A) law enforcement proceeding exemption, and properly demonstrated through *Bevis* categories and a *Vaughn* index how Exemption 7(A) applies to each document.

### E.      *In Camera Reliance on Other Unnamed FOIA Exemptions*

Plaintiff moves for partial summary judgment on its contention that Defendant is improperly relying on unnamed exemptions in withholding materials requested by Plaintiff.  Pl.'s Opp'n at 23.  Plaintiff points to statements in Defendant's public record that allude to the possibility of applying exemptions other than Exemptions 1 and 7(A), but without specifying which exemptions are being invoked.  *Id.* at 24 (citing Kiefer Oct. 30, 2003, Decl. ¶ 4; Kiefer Dec. 17, 2003, Decl. ¶¶ 4, 28).  Even though Defendant states that the justification for using these other exemptions is provided in an *in camera, ex parte* declaration, "this does not put the exemption claims on the public record to adequately inform Plaintiff of the exemptions claimed or permit Plaintiff to challenge the propriety of their application."  Pl.'s Opp'n at 24.

Defendant in fact placed other exemptions on the public record when it answered Plaintiff's complaint on April 9, 2001, stating that the records responsive to Plaintiff's request were "likely" to be subject to "Exemption B(1), B(2), 7(C), and 7(D)" and noted that it already had relied on the Privacy Act's (j)(2) exception to withhold requested information. Def.'s Ans. at 1, ¶ 21. On the public record in moving for summary judgment, Defendant declines to name any exemptions except for 7(A) and 1, but explains that it is raising "other exemptions" pursuant to a ruling in this Circuit requiring defendant agencies to raise all applicable exemptions in the initial proceedings before the district court, or else waive the right to raise them later. Kiefer Dec. 17, 2002, Decl. ¶ 28; Def's Reply at 6, 8 (citing *Maydak v. United States Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000)). Because Defendant is claiming Exemption 7(A) to justify withholding all of the Plaintiff's requested information, it seeks to identify other exemptions at this point, since Exemption 7(A) applies only to current or pending law enforcement proceedings and therefore will no longer apply after the pertinent law enforcement proceeding is complete. Kiefer Dec. 17, 2002, Decl., ¶ 18 n.2. Defendant states that its *in camera, ex parte* submissions justify the applicability of these other exemptions "in a manner which will allow this Court to rule on the issues relevant to this case without compromising investigative and security efforts discussed more fully in defendant's previous filings." Def's Reply at 8.

This Circuit requires a defendant agency to "genuinely assert" the exemptions upon which it plans to rely after Exemption 7(A) no longer is available to withhold information, and the use of the exemptions must be justified in a manner that the district court can rule on the issue. *Maydak*, 218 F. 3d at 764-65, 767. Where sensitive information is at issue, courts review the *Vaughn* index or the requested documents *in camera*. *Id.* at 767. As noted *supra,* this Circuit

has held that a trial court should not use *in camera* affidavits unless necessary, *Lykins*, 725 F.2d at 1465, with a principal criterion being when "public disclosure of that information would compromise the secrecy asserted," *Arieff*, 712 F.2d at 1471.  The Circuit has permitted the use of *in camera* affidavits when agencies sought to withhold classified information under Exemption 1, and occasionally other exemptions such as 7(A).

Despite this, the Court finds no precedent to permit a defendant agency to name and rely on the exemptions being invoked solely on an *in camera, ex parte* basis.  "*In camera, ex parte* review . . . 'is not a substitute' for the government's obligation to justify its withholding in publicly available and debatable documents."  *Schiller v. Nat'l Labor Relations Bd.,* 964 F.2d 1205, 1209 (D.C. Cir. 1992) (internal citations omitted).  Even in cases in which the CIA will neither confirm nor deny the existence of a requested document, the CIA has had to publicly state the FOIA exemption that applies to the situation at hand.  *See, e.g., Phillippi,* 546 F.2d 1009; *Wheeler v. CIA*, 271 F. Supp. 2d 132 (D.D.C. 2003).  Defendant has not shown how naming certain statutory provisions upon which Defendant plans to rely after the 7(A) exemption lapses would jeopardize the ongoing investigation or national security more generally.

Given that this Circuit seeks to minimize the district court's reliance on *in camera, ex parte* submissions and the fact that Defendant placed other exemptions on the public record when it answered Plaintiff's complaint, the Court finds no reason to not continue to disclose such other exemptions here.  The Court also finds, however, that Defendant's *in camera, ex parte* submission meets the standards of *Maydak* in that it formally invokes Exemptions (b)2, (b)7(C) and the Privacy Act's j(2) Exemption, which are already on the public record, explaining why each applies to the information contained in the sample of records in Defendant's *Vaughn* index.

27

*Maydak*, 218 F.3d at 766.  One other exemption, Exemption (b)(3), has been asserted only *in camera* and *ex parte* as to 23 pages.  The Government has provided no support for the proposition that the specific exemption can ever be only stated *in camera* and not stated on the public record.  However, the Court is satisfied based on the *in camera*, *ex parte* submissions that Exemption (b)(3) is properly asserted.  The criteria for asserting Exemption (b)(3) has been met, and its application to each of the 23 pages, in which no sampling was used, is appropriate.  The Court also concludes that no further information as to this exemption should be disclosed on the public record, as explained in the declaration filed *in camera*, *ex parte*.  Accordingly, the Court concludes that it is appropriate to rely in this case on *in camera, ex parte* submissions for raising other exemptions as a basis for Plaintiff's motion for summary judgment.[17]

### F.    *Segregability of Non-Exempt Information*

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" from FOIA's disclosure requirements.  5 U.S.C. § 552(b).  *See, e.g.*, *Oglesby*, 79 F.3d at 1178 ("the agency must determine if any portion of an exempt document contains nonexempt information, and, if so, must disclose that nonexempt portion.").  District courts are required to consider segregability issues even when the parties have not specifically raised such claims.  *See Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  Accordingly,

---

[17] The Court observes that Defendant is correct in acknowledging that if Plaintiff's FOIA request is still active once Exemption 7(A) no longer applies "each page of the *full* record . . . will still need to be processed and reviewed page-by-page, line-by-line for information exempt under other exemptions of the FOIA," consistent with *Maydak*'s provisions.  Def's Reply at 6. Consistent with the requirements of FOIA, Plaintiff would have an opportunity to litigate Defendant's justifications if and when this analysis takes place.

this Court analyzes whether there are any reasonably segregable portions of the withheld

materials, aside from the public source information already released to Plaintiff, and concludes

that there are not.

Defendant contends it has met the requirement to evaluate the requested material for

segregability and has concluded that "no information can be segregated for release at this time."[18]

Kiefer Dec. 17, 2002, Decl. ¶ 22.   It states that "every effort" was made to segregate and provide

any information within the files not covered by the exemptions asserted, but contends it could not

disclose the information "because it is so intertwined with protected material that segregation is

not possible," or "because its release would identify the underlying protected material." *Id*. ¶ 33.

As part of Plaintiff's motion for partial summary judgment on the issue of the 7(A)

exemption, Plaintiff argues that Defendant has made only blanket statements regarding whether it

attempted to segregate any non-exempt information from the withheld material.  Pl.'s Opp'n at

22.  Plaintiff suggests that this Court follow other cases in which federal agencies were required

to do more than make "conclusory" statements regarding segregability, and instead demonstrate

that the agency has performed a thorough analysis as to what non-exempt information may be

reasonably segregated from the material being withheld pursuant to a FOIA exemption.  *Id.*

In this case, however, Defendant has met the obligation to analyze the segregability of the

withheld information pursuant to all the claimed exemptions, although it has not demonstrated so

on the public record.  As other courts in this District have done, *see, e.g.*, *Edmonds*, 272 F. Supp.

---

[18] Defendant acknowledges that the files in question do contain some "public source information," such as newspaper articles or motions from court files, that are segregable. Kiefer Oct. 30, 2002, Decl. ¶¶ 6-8; Dec. 17, 2002, Decl. ¶¶ 24-27.  However, Defendant subsequently provided this information to Plaintiff, *see note 6 supra,* and Plaintiff has not argued that additional segregable public source information exists.

2d at 47, this Court has reviewed the *in camera, ex parte* submissions of Defendant and finds that

no segregation is possible, beyond the public source information, without disturbing the national

security and law enforcement proceeding objectives that the FOIA exemptions are designed to

protect.

## IV:  CONCLUSION

After considering the parties' briefings, submitted exhibits, and the relevant law, the

Court shall grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for

Partial Summary Judgment.  The Court finds that the submission of Defendant's Supplemental

Statement of Facts Not in Material Dispute renders moot Plaintiff's Motion to Compel an

Adequate Statement of Material Facts Not in Dispute.  An Order accompanies this Memorandum

Opinion.

Date:   September 8, 2004

                                           _/s/_                        
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge